**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**HARRISONBURG DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **Case No. 5:12-cr-14** |
| | ) | |
| | ) | **By: Michael F. Urbanski** |
| **ANTONIO DEMETRIUS WILLIAMS,** | ) | |
| Defendant | ) | **Chief United States District Judge** |

## MEMORANDUM OPINION

This matter is before the court on defendant Antonio Demetrius Williams' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), as revised by the First Step Act of 2018, ECF No. 761. The government has responded, ECF No. 768, and Williams has replied, ECF No. 770. For the reasons stated herein, the court will **GRANT** Williams' motion for compassionate release, **VACATE** his life sentence, and **REDUCE** his sentence to 188 months' incarceration.

### I.

On April 1, 2013, the court sentenced Williams to mandatory life in prison following his conviction for conspiracy to distribute 280 grams or more of cocaine base.[1] The court has issued two prior memorandum opinions in this case, related to a motion pursuant 28 U.S.C. § 2255. ECF Nos. 687, and 699. The procedural history and factual basis have been thoroughly detailed in the previous opinions and the court will only reiterate the relevant facts as necessary to his motion for compassionate release.

---

[1] Williams was sentenced to mandatory life on Count 1, Conspiracy to Distribute 280 Grams or More of Cocaine Base, and 240 months, to run concurrently, on multiple distribution counts (Counts 2, 3, 4, 6, 9, and 10) charging distribution of a measurable quantity of cocaine base.

At the time the court imposed the mandatory life sentence, Williams was only 22 years old. When he was 18 years old, Williams was convicted of two cocaine possession felonies in Florida, for which he served 28 and 19 days, respectively. Despite Williams' age and the de minimus nature of his predicate convictions, the government moved for a sentencing enhancement under 21 U.S.C. § 851, seeking "an enhanced penalty of mandatory life (and a minimum period of supervised release of at least 10 years) for individuals having three prior drug felony convictions." ECF No. 96.[2]

Although the government's § 851 notices for Williams' two prior Florida state drug convictions met the then-required definition of "felony drug offenses" under 18 U.S.C. § 841(b)(1)(A), it is striking that Williams committed those crimes shortly after his 18th birthday and that his combined sentence for both offenses was only 47 days. The court noted this disparity in its November 15, 2016 memorandum opinion on Williams' habeas corpus petition:

> Prior to his illegal foray into Virginia, Antonio Williams pled guilty to two Florida cocaine possession felonies, and received time-served sentences of 28 and 19 days. At the time, Williams was 18 years old. Just four years later, following the jury's finding of guilt, Williams, then only 22 years old, was sentenced to a mandatory term of life imprisonment without release under 21 U.S.C. § 841(b)(1)(A). One cannot help being struck by the enormous difference between Williams' state sentences and his federal one. After exhaustively examining the issue of whether Williams' Florida 2008 and 2009 Possession of Cocaine convictions qualify as felony drug offenses under 21 U.S.C. §

---

[2] As noted in footnote 1 of the court's November 15, 2016 memorandum opinion, the government originally claimed that Williams had a qualifying felony drug offense conviction on February 23, 2012 in the Circuit Court of Frederick County, Virginia. However, Williams' Frederick County conviction was not a qualifying predicate felony drug offense because it was not final before he committed the § 841(b)(1)(A) offense in this case. United States v. Antonio Williams, No. 5:12cr00014, 2016 WL 6780027, at *1 n.1 (W.D. Va. Nov. 15, 2016) (docketed at ECF No. 687). Thus, the only two predicate felony drug offenses at issue were the Florida cocaine possession convictions.

> 802(44), the court must conclude that the mandatory life sentence imposed on Williams, however incongruous in light of predicate state convictions, was lawful.

Williams, 2016 WL 6780027, at *8. The court remarked on this stark disparity at Williams'

sentencing hearing on March 20, 2013.

> [W]hat really bothers me about this case is that you've got this 22-year-old young man who got slapped on the wrist — not even a slap on the wrist. He got a little love tap down in Florida and he probably thought down there, "I'll plead guilty, I'll take my time served, I'll move on and that's what my lawyer tells me to do, that's what I'll do, I'll get out of jail," not ever knowing that if he gets caught again and is prosecuted federally, he faces mandatory life. That's what's troubling about this case. . . . [I]t's just the sheer difference between 28 days and 19 days and now this life sentence that under the statute I'm required to impose.

Sent'g Hr'g Tr., United States v. Antonio Williams, No. 5:12cr00014, ECF No. 499, at 9-10.

Williams now seeks a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),

arguing that the substantial modifications to the enhancement provisions of 21 U.S.C. §§ 841

and 851 in the First Step Act establish "extraordinary and compelling" reasons warranting his

compassionate release. In order to enhance a sentence under § 841(b)(1)(A), the First Step Act

now requires that the predicate conviction be a "serious drug felony," as defined at 21 U.S.C.

§ 802(57), in rather than a mere "felony drug offense," as defined at 21 U.S.C. § 822(44). While

any state or federal drug offense punishable by imprisonment for more than one year qualified

as a "felony drug offense," to qualify as a "serious drug felony," the First Step Act now requires

that "the offender served a term of imprisonment of more than 12 months." 21 U.S.C. §

802(57). It is undisputed that Williams served nowhere near 12 months for either of his Florida

convictions. This means that were he sentenced today, Williams' sentence would not be

subject to enhancement and he would no longer be required to serve a mandatory life sentence. Indeed, although the statutory maximum for a § 841(b)(1)(A) sentence is life imprisonment, the mandatory minimum sentence is only 10 years. Williams argues that this sea change in mandatory minimum sentences enunciated in the First Step Act constitutes an extraordinary and compelling reason to warrant reduction of his sentence. As such, Williams asks the court to reduce his mandatory life sentence to 120 months. For the reasons that follow, the court agrees with Williams, but will reduce his sentence to 188 months, representing the low end of his correctly calculated sentencing guidelines.[3]

## II.

A federal district court "may not modify a term of imprisonment once it has been imposed" except in limited circumstances. 18 U.S.C. § 3582(c). One such exception is the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), which was amended by the First Step Act on December 21, 2018. Prior to the amendment, a court could reduce the term of imprisonment only "upon a motion by the Director of the Bureau of Prisons [(BOP)]". Id. Now, following the First Step Act, the statute also allows a court to reduce a sentence upon motion by the defendant "if it finds . . . extraordinary and compelling reasons warrant such a reduction." Id. The court must also consider the "factors set forth in 3553(a), to the extent they are applicable," and ensure that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." Id. As a threshold issue, in order for a

---

[3] As currently calculated, Williams would have a total offense level of 34 and a criminal history category of III, yielding a guidelines range of 188-235 months.

4

defendant to bring a motion before the district court, § 3582(c)(1)(A) contains an exhaustion requirement. The defendant may only bring a motion for compassionate release after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request . . . whichever is earlier." Id.

Accordingly, Williams' requested relief requires the court to consider: (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence and if such a reduction is consistent with applicable policy statements of the United States Sentencing Commission (the "Sentencing Commission"); and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

i.  <u>Williams has exhausted available administrative remedies.</u>

Williams submitted a written request for compassionate release to the warden of USP Coleman I, seeking a reduction in his sentence based on extraordinary and compelling circumstances—specifically, that "due to the changes in the law made by the First Step Act, none of [his] prior drug convictions qualify as a 'serious drug felony,' thus making [his] guideline sentence under today's law of 188-235 months." ECF No. 761-1, at 2. The warden denied his request on April 30, 2020, and Williams appealed. Williams' appeal was likewise denied on May 20, 2020. ECF No. 761-2. Accordingly, the court finds that Williams has exhausted administrative remedies as required by § 3582(c)(1)(A) and he may properly bring

this motion.[4]

    ii.    <u>Williams presents extraordinary and compelling reasons to warrant a sentence reduction.</u>

The compassionate release statute states that a court may modify a term of imprisonment "upon motion of the defendant . . . if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A). Therefore, the court must determine if it finds extraordinary and compelling reasons exist and if a reduction is consistent with applicable policy statements.

First, the court finds that it is valuable to consider the history behind § 3582(c)(1)(A) and the corresponding changes made by the First Step Act. In 1984, Congress passed the Comprehensive Crime Control Act, including the Sentencing Reform Act, which abolished federal parole. <u>See</u> Pub. L. No. 98-473, 98 Stat 1837 (1984); <u>see also</u> <u>Richmond v. Polk</u>, 375 F.3d 309, 316 (4th Cir. 2004) ("the Sentencing Reform Act of 1984 . . . abolished parole for federal offenses committed after November 1, 1987"). In its place, Congress passed § 3582(c), which provided that a district court could not modify a final term of imprisonment except in limited situations—including for "extraordinary and compelling reasons." Comprehensive Crime Control Act of 1984, § 3582(c), Pub. L. No. 98-473 (current version at 18 U.S.C. § 3582(c)(2018)). In its original form, only the Director of the BOP could initiate a motion for

---

[4] To the extent that Williams has not fully exhausted the available administrative appeals within the BOP, the court also finds that the government has waived the exhaustion requirement by failing to argue it in their opposition. <u>See</u> <u>United States v. Alam</u>, 960 F.3d 831, 834 (6th Cir. 2020) (finding that the exhaustion requirement is a mandatory claims-processing rule that has two exceptions: waiver and forfeiture).

compassionate release. In other words, the BOP served as a gatekeeper for whether a district court could consider a motion for compassionate release.

This rarely used vehicle for sentence modification changed dramatically when Congress amended § 3582(c)(1)(A) with the First Step Act. Section 603(b) of the First Step Act, instructively titled "Increasing the Use and Transparency of Compassionate Release," amended § 3582(c)(1)(A) to allow individual defendants, in addition to the BOP, to file a motion with the district court for a reduction in their sentence. See First Step Act of 2018, Pub. L. 115-391, 132 Stat 5194. Congress added an additional hurdle for defendants to overcome by implementing the exhaustion requirement, as discussed above. Accordingly, if a defendant satisfies the exhaustion requirement, he can now petition the court directly for compassionate release.

While the First Step Act significantly changed the compassionate release statute by removing the BOP as the gatekeeper for initiating compassionate release motions, it did not change how "extraordinary and compelling" should be defined. Prior to the First Step Act, Congress directed the Sentencing Commission to "promulgate and distribute . . . general policy statements regarding the application of the guidelines . . . including the appropriate use of . . . the sentencing modification provisions set forth in sections . . . 3582(c) of title 18." 28 U.S.C. § 994(a)(2)(C). Specifically, Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t).

Following Congress' instructions, the Sentencing Commission published the following

policy statement in the U.S. Sentencing Guidelines Manual ("U.S.S.G.") with respect to compassionate release:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> > (1)(A) Extraordinary and compelling reasons warrant the reduction; or
> > (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> > (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

In the commentary for this policy statement, the Sentencing Commission provided application notes, identifying four ways for a defendant to demonstrate that "extraordinary and compelling" reasons exist justifying compassionate release: (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) as determined by the Director of the BOP, for "other reasons" other than, or in combination with, the reasons described in application notes (A)–(C). U.S.S.G. § 1B1.13, cmt.

n. 1(A)–(D).

While this policy statement was first effective on November 1, 2006, and amended numerous times since, it has remained unchanged since the passage of the First Step Act.[5] Most notably, the policy statement still requires the BOP to serve as the gatekeeper for initiating compassionate release motions. See U.S.S.G. § 1B1.13 ("Upon motion of the Director of the Bureau of Prisons . . . the court may reduce a term of imprisonment . . ."). Similarly, application note (D) still only allows the BOP to determine what other extraordinary and compelling reasons exist beyond those enumerated in application notes (A)–(C). See U.S.S.G. § 1B1.13, cmt. n. 1(D).

Even though the Sentencing Commission has not updated the policy statement following the First Step Act, the government argues the court is still bound by its language.[6] The government asserts that "the question can be posed as whether courts considering compassionate release motions continue to be bound by the Sentencing Guidelines policy statement that defines 'extraordinary and compelling reasons.'" United States' Resp. in Opp'n, ECF No. 768, at 2. The government argues that "Congress expressly granted to the Sentencing Commission (not the courts) the power to determine what constitutes a sufficient ground for compassionate release." Id. at 6. Further, the government argues that the First Step Act did not change the policy statement and "somehow place[] independent discretionary authority in

---

[5] See United States Sentencing Commission, Guidelines Manual, Appendix C, Amendments to the Guidelines Manual, Amendment 683, available at: https://guidelines.ussc.gov/ac/683 (last visited September 29, 2020).
[6] The court notes the inherent irony in the government's argument that the court does not have the authority to reduce Williams sentence because "the [Sentencing Reform Act] calls for consistent sentencing." ECF No. 768, at 13. Indeed, the court finds it has the authority precisely for this reason—to ensure Williams' sentence is consistent with other similarly situated defendants.

the hands of a district court to" decide what constituted extraordinary and compelling reasons.

Id. at 7.

The crux of the government's argument is summed up by the following excerpt from

its brief:

> [T]he FSA merely streamlined the procedural rules by which a
> defendant could seek compassionate release, allowing a
> defendant to petition directly to the court instead of requiring the
> BOP to be the movant. It did not change the substantive bases
> for such relief; those bases were still left to the Sentencing
> Commission to decide. Unless and until §§ 994(a)(2)(C) and
> 994(t) are repealed, they must control. Courts cannot arrogate for
> themselves powers specifically limited by Congress.

Id. (emphasis in original).

On the other hand, Williams argues that the court is not bound by the outdated policy

statement and that, because there is no policy statement that relates to a defendant bringing a

motion for compassionate release, there is no applicable policy statement for the revised §

3582(c)(1). Williams further argues that the Sentencing Commission did not limit

"extraordinary and compelling" reasons to medical, age-related, or family circumstances,

because it always allowed for "other reasons" in application note (D). See U.S.S.G. § 1B1.13

cmt n. 1(A)–(D). In the end, Williams argues that the policy statement "is not binding on the

courts because it is inconsistent with the amended text of § 3582—and the undisputed purpose

of the First Step Act." ECF No. 761, at 11.

The court agrees with Williams that the policy statement in § 1B1.13, as currently

written, is inconsistent with the First Step Act and is thus not binding on the court. Rather,

the policy statement serves an advisory role. See United States v. Fox, No. 2:14-cr-03, 2019

WL 3046086, at *3 (D. Me. July 11, 2019) (the "existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not conclusive given the statutory change"); see also United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."). The compassionate release statute was amended to allow both the BOP and the defendant, after meeting the exhaustion requirement, to bring motions for compassionate release and the court finds that there is no current policy statement applicable to motions for compassionate release filed by defendants. See United States v. Redd, 444 F. Supp. 3d 717, 724 (E.D. Va. 2020) ("there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"); Beck, 425 F. Supp. 3d at 587 ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act."); United States v. Brooks, No. 07-cr-20047, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020) (collecting cases).

Because § 1B1.13 is inconsistent with the First Step Act, the application notes are likewise unpersuasive and not binding on the court. See Stinson v. United States, 508 U.S. 36, 38 (1993) ("commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with . . . that guideline[]"). The court is therefore not limited to the three enumerated reasons in the application notes and is likewise not limited by the BOP's determination of what "other"

"extraordinary and compelling" reasons exist. See Redd, 444 F. Supp. 3d at 726-27 ("the Court joins other courts in concluding that a court may find, independent of any motion, determination or recommendation by the BOP Director, that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in [the application notes]") (collecting cases).

Instructively, the Redd court wrote the following:

> Application Note 1(D)'s prefatory language, which requires a determination by the BOP Director, is, in substance, part and parcel of the eliminated requirement that relief must be sought by the BOP Director in the first instance, particularly since it would be unlikely that the BOP Director would determine that an extraordinary and compelling reason exists under Application Note 1(D) but then decline to file a motion for compassionate release based on that determination. For these reasons, whether a court's finding of a warranted sentence reduction based on "other reasons" would be consistent with U.S.S.G. § 1B1.13 should be assessed based on whether that finding would be consistent with those other reasons had they been presented to the Court by the BOP Director as the basis for relief.

Id. at 725-26; see also United States v. Young, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("In short, federal judges are no longer constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction."); United States v. Haynes, No. 93 CR 1043, 2020 WL 1941478, at *13 (E.D.N.Y. Apr. 22, 2020) ("The title of the First Step Act section that amends 18 U.S.C. § 3582(c)(1)(A) . . . is 'Increasing the Use and Transparency of Compassionate Release.' . . . That title supports the reading that U.S.S.G § 1B1.13 cmt. n.1(D) is not applicable when a defendant requests relief under § 3582(c)(1)(A) as amended because it no longer explains an appropriate

use of that statute.") (quoting United States v. Cantu-Rivera, 423 F. Supp. 3d 345, 350 (S.D. Tex. 2019)).

The court adopts the reasoning set forth in Redd and finds that the First Step Act revised the compassionate release statute such that it removed the BOP as the gatekeeper for who can properly bring a motion. The court reads § 3582(c)(1)(A) to grant the district court the same discretion as the BOP when it considers a compassionate release motion properly before it, allowing the district court to also decide if "other reasons" exist to establish "extraordinary and compelling reasons." See United States v. Stephenson, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020). Therefore, the court will consider if Williams has demonstrated extraordinary and compelling reasons to warrant a reduction in his sentence, including reasons other than those enumerated in the application notes to § 1B1.13.

Williams argues that the amendment to the sentence enhancement provisions of §§ 841(b)(1) and 851, such that the enhancements now only apply to a person with a prior conviction for a "serious drug felony," rather than simply a "felony drug offense," constitutes an extraordinary and compelling reason warranting a sentence reduction. ECF No. 761, at 3. Because neither of his prior Florida cocaine possession convictions qualify as a "serious drug felony" under the amended law, if he were sentenced today, he would not face a sentence enhancement. Id. The court agrees with Williams.[7]

---

[7] In an earlier habeas opinion, the court noted that because of a subsequent change in Florida criminal law, had Williams been convicted of the two predicate state court drug possession charges a few months later, those convictions would not have counted even as felony drug offenses. Williams was convicted on October 3, 2008 and February 3, 2009, and the Florida statute was amended to take those crimes out of the felony drug offense category only months later, on July 1, 2009. See Williams, 2016 WL 687027, at *4-8.

When Williams was sentenced, § 841(b)(1)(A) provided for an enhanced penalty of mandatory life imprisonment if the defendant committed certain drug conspiracy violations "after two or more prior convictions for a felony drug offense have become final." 21 U.S.C. § 841(b)(1)(A) (2010). Section 401 of the First Step Act made two relevant changes to the enhanced penalty of § 841(b)(1)(A): first, it required that the defendant have two prior serious drug felony convictions for the enhancement to apply; and second, it reduced the penalty for those defendants to a 25-year mandatory minimum, instead of life. See 21 U.S.C. § 841(b)(1)(A) (2018). Today, in order to satisfy the "serious drug felony" requirement, the defendant must have served a term of imprisonment of more than 12 months on each of the prior offenses. See 21 U.S.C. § 802(57); 18 U.S.C. § 924(e)(2).

Here, if Williams were sentenced today, mandatory life imprisonment would not be the outcome. First, he served a total of 47 days in jail, 28 for the first conviction and 19 for the second. These scant terms of incarceration clearly do not meet the standard for a "serious drug felony" as § 841(b)(1)(A) requires. Second, even if Williams did meet the "serious drug felony" requirement—which he clearly would not—he would only face a mandatory minimum of 25 years' imprisonment, a far cry from the mandatory life imposed.

The government agrees that "Williams is correct that if sentenced today, he would face a mandatory minimum of 120 months instead of life on his conspiracy conviction because any enhancement would not apply." ECF No. 768, at 11. However, the government argues that because Congress did not make section 401 of the First Step Act retroactive, Williams does not have a valid basis for compassionate release on account of extraordinary and compelling

reasons and that "using section 3582(c) as a vehicle to effectuate a non-retroactive amendment is legally wrong and would result in an end-run around Congress' choice on whether to allow retroactivity."[8] ECF No. 768, at 2.

The government is correct that the changes to section 401 of the First Step Act were not made explicitly retroactive, while other sections were made retroactive. See, e.g., First Step Act of 2018, Section 404, Pub. L. 115-391, 132 Stat 5194 (making changes to the Fair Sentencing Act of 2010 retroactive). As such, the First Step Act did not grant Williams, and all other similarly situated defendants, an automatic reduction in their sentence. Rather, as with changes to the 18 U.S.C. § 924(c) "stacking" penalties, where section 403 of the First Step Act likewise did not automatically apply, it is up to the courts to make an individualized assessment of a defendant seeking a reduction in his sentence. See Redd, 444 F. Supp. 3d at 721 (the "First Step Act increased the opportunity for defendants to obtain a reduction in their sentence based on an individualized consideration under designated criteria.").[9] The same applies for section 401 of the First Step Act—while Congress did not make the changes to § 841(b)(1)(A) automatically retroactive, the court can consider the amendments, in addition to undertaking

---

[8] While the government opposes Williams' motion for compassionate relief, it supports a reduction in his overall sentence. In the letter sent in support of Williams' request for a sentence commutation, the United States Attorney wrote: "Mr. Williams was a very young man who had terrible errors in judgment. While I agree he should face a substantial punishment for his crimes, a life sentence is simply not warranted under the circumstances . . . [I] urge you to recommend a commutation of Mr. Williams' sentence to 180 months imprisonment." ECF No. 768-1, at 2. The government's response in opposition notes that Williams' sentence commutation petition remains pending. ECF No. 768, at 1.

[9] In United States v. Arey, No. 5:05-cr-00029, 2020 WL 2464796, at *5 (W.D. Va. May 13, 2020), this court agreed with Redd, finding that "[w]hile the First Step Act § 403(a) did not make this change retroactive, many district courts have reasoned that the First Step Act's change in how sentences should be calculated when multiple § 924(c) charges are included in the same indictment constitutes an extraordinary and compelling reason under § 3582(c)(1)(A)." (internal citations omitted).

an individualized examination of each defendant, in determining if the circumstances warrant a reduction in his sentence under § 3582(c)(1)(A). See id. ("Nor does the First Step Act's lack of retroactivity justify withholding sentencing relief given the overall purpose of the First Step Act amendments, which expressly allowed for the possibility for a sentence reduction based on an individualized assessment of the § 3553(a) factors and other criteria.").

Williams argues that the dramatic reduction under section 401 of the First Step Act to the § 841(b)(1)(A) enhancements constitutes an extraordinary and compelling reason warranting a reduction in his sentence. The court agrees. Similar to the many district courts across the country that have found that the "stacking" changes to § 924(c) constitute an extraordinary and compelling reason to warrant a sentence reduction, the court finds the same holds for the tectonic changes to the enhancement provisions of § 841(b)(1)(A). See Redd, 444 F. Supp. 3d at 721; Haynes, 2020 WL 1941478, at *15 (collecting cases). The court in Haynes specifically found that "[f]or an individual like Haynes . . . the change [in § 924(c)] spells the difference between thirty years in or out of prison." 2020 WL 1941478, at *15. The same must be true when the difference for Williams is a mandatory ten years in prison as opposed to the rest of his life.

Indeed, in United States v. Day, No. 1:05-cr-460, 2020 WL 4251803, at * 12, No. 1:05-cr-460 (E.D. Va. July 23, 2020), the Eastern District of Virginia held just that.

> There is no doubt that there is a gross disparity between the sentence Defendant received and the sentence he would have received after the First Step Act. See United States v. Urkevich, 2019 U.S. Dist. LEXIS 197408, at *8, 2019 WL 037391, at *4 (D. Neb. Nov. 14, 2019) ("A reduction in [defendant's] sentence is warranted by extraordinary and compelling reasons, specifically

the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed."). In that regard, the Court notes that, were Defendant sentenced today, his sentence with respect to Count 1 would be dramatically different. Instead of a mandatory Life sentence (predicated on two qualifying § 851 offenses), Defendant would today face a mandatory minimum sentence of 15 years (predicated on a single qualifying § 851 offense), with a substantially lower than Life Guidelines sentence. These changes are extraordinary and compelling developments that constitute extraordinary and compelling reasons justifying a reduction in Defendant's Life sentence. See Redd, 2020 WL 1248493, at *7 (finding as extraordinary and compelling the disparity between defendant's sentence at the time of his intitial sentencing (603 months) and the sentence he would have received under today's sentencing regime (243 months) for the same offense conduct, a difference that was premised on Congress' repudiation of "stacked" 18 U.S.C. § 924(c) charges arising from a single indictment).

Consistent with the reasoning of the Eastern District of Virginia in Day, the court finds that the dramatic change made by the First Step Act—changing the predicate conviction required from "felony drug offense" to "serious drug felony" for § 841(b)(1)(A) sentence enhancement purposes—constitutes an extraordinary and compelling reason to reduce Williams' sentence. Were he convicted today, neither of Williams' Florida cocaine possession convictions would qualify to enhance his sentence, lowering his mandatory mimimum sentence from life to ten years.

The circumstances of this case are especially extraordinary and compelling. Shortly after his 18th birthday, Williams committed the two Florida cocaine possession offenses and received time-served sentences of 28 and 19 days. Because the government filed § 851 notices for each of those Florida convictions in his Western District of Virginia prosecution under §

841(b)(1)(A), the court was required to sentence Williams, then only 22 years old, to spend the rest of his life in federal prison. The gross disparity between the sentences Williams received for his two prior state convictions and his federal conviction was extraordinary and compelling in 2013 when he was mandatorily sentenced to life in prison. And it is even more extraordinary and compelling now that Congress has changed the law such that the sorts of minor sentences served by Williams in Florida no longer qualify to enhance the mandatory minimum penalties under § 841(b)(1)(A). Now, only a "serious drug felony," for which a defendant must have served more than 12 months in prison, qualifies. Both the striking disparity between the short duration of Williams' prior state court sentences and his federal mandatory life sentence and subsequent recognition by Congress that a mandatory life sentence is not warranted under these circumstances establish extraordinary and compelling reasons to vacate Williams' life sentence.

iii.   <u>A sentence reduction is appropriate after considering the § 3553(a) factors.</u>

Having found that extraordinary and compelling reasons exist to warrant a reduction in Williams' sentence, the court must consider if a reduction is consistent with the applicable § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A). Accordingly, the court must consider the following applicable § 3553(a) factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>    (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

. . . [and]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

See United States v. Rodriguez, 451 F. Supp. 3d 392, 406-07 (E.D. Pa. 2020) (citing 18 U.S.C. § 3553(a)).

During Williams' original sentencing, due to the mandatory nature of the sentence based on the §§ 841(b)(1)(A) and 851 enhancements, the court was not required to exhaustively delineate the § 3553(a) factors, including Williams' youth, lack of a leadership position, and non-violent criminal history. The court is now required to consider those factors and, when applying them to Williams, the court finds that they weigh heavily in favor of a sentence reduction.

First, when the court sentenced Williams, he was only 22 years old, and had just turned 20 when the controlled buys that led to his arrest occurred. The court notes that Williams' youth is an important factor in determining a just sentence. See U.S.S.G. § 5H1.1 ("Age (including youth) may be relevant in determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."). Further, Williams' family circumstances were less than ideal. His

father had been in prison since Williams was young,[10] his mother was a co-defendant in his case, and he dropped out of high school in the ninth grade. Williams also does not have a violent criminal history and he did not receive an enhancement at sentencing for possession of a dangerous weapon or use of violence.[11]

Second, while Williams was involved in a serious drug distribution conspiracy, his sentencing guidelines calculations did not include an enhancement for possession of a firearm, use of violence or aggravating role. The court does not diminish the seriousness of Williams' involvement in the conspiracy or the seriousness of the crime, but rather the court is required to consider if the sentence imposed is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). In addition, the two predicate convictions that the government relied on in filing its § 851 enhancement were for two drug possession convictions in Florida, for which Williams served a combined total of 47 days. While both specific and general deterrence require a lengthy term of incarceration for this offense, the court believes that a term of 188 months, reflecting the low end of his guideline range under current law, to be "sufficient, but not greater than necessary." Id.

Third, with respect to providing just punishment, the court firmly believes—and the government concurs—that Williams' mandatory life sentence is too long. See Letter from

---

[10] While Williams' father was incarcerated when he was young, his father was released from the BOP in 2013 and currently resides in Florida and owns and operates his own landscaping business.

[11] The policy statement directs the court to consider if the defendant is a danger to the safety of any other person or to the community, as provided in U.S.C. § 3142(g). See U.S.S.G. § 1B1.13(2). While the policy statement is not binding on the court, the court finds that Williams is not a danger to the community or any other person requiring imprisonment for the remainder of his life as he does not have a violent criminal history, did not possess a firearm or engage in violence during this offense, and he has a release plan which involves living with his father and an offer of employment.

United States Attorney to Acting Pardon Attorney, 768-1 ("[The United States Attorney] join[s] him in this request and urge[s] you to recommend a commutation of Mr. Williams' sentence to 180 months imprisonment."). To its credit, while arguing that a compassionate release petition is the "wrong legal vehicle," the government "agree[s] that justice requires action to fix Williams' sentence." United States' Resp. in Opp'n, ECF No. 768, at 3.

Fourth, as it relates to rehabilitative services, the court notes that Williams has taken advantage of his time incarcerated by obtaining his GED. The court also takes into consideration that Williams has a release plan to live with his father and a job offer to work in his landscaping business.

Finally, the court puts significant weight on the need to avoid unwarranted sentencing disparities. A similarly situated defendant, with the same prior convictions from Florida, would face a mandatory minimum of ten years if sentenced today. Instead, based on the timing of his offense, Williams, a 22-year-old, was sentenced to spend the remainder of his life incarcerated.

Accordingly, the court concludes that, in light of the First Step Act and the changes to the § 841(b)(1)(A) sentencing enhancements, a reduction in Williams' sentence is appropriate after considering the § 3553(a) factors. Williams should not remain subject to the draconian sentencing enhancements that no longer apply simply because he was sentenced before the statute was amended.[12]  As such, the court will reduce the mandatory life sentence on Count

---

[12] The court notes that in its December 18, 2019, order the court denied Williams' motion to reduce his sentence under the First Step Act. ECF No. 760. The court concluded that because the changes made by the First Step Act to § 841(b)(1)(A) were not made retroactive, the court could not alter Williams' sentence based on the First Step Act alone. However, at the time, Williams had moved solely under the First Step Act, whereas now his

1 to 188 months, imposing a sentence at the low end of the sentencing guidelines as calculated today.[13]

## III.

After sentencing Williams to mandatory life on Count 1, the court sentenced him to 240 months on each of six distribution counts, to run concurrently.  As the sentencing transcript reveals, the court initally signaled a ten year sentence on each of these measureable quantity distribution counts, but changed to twenty years after noting that the guidelines range for these counts, standing alone, was 235 to 293 months. The court imposed a sentence near the low end of the guideline range of 240 months, to run concurrently. The court stated:

> I'm varying from the guidelines on each one of those individual distribution charges, for the following reasons. I'm going to impose a sentence on each one of those to run concurrently, of 240 months. I do that because, one its smack dab in the middle of the 235 to 293, which would be the guideline range sentence separate and apart from this life calculation that ramps up the other to 360 months.

Sent'g Hr'g Tr., United States v. Antonio Williams, No. 5:12cr00014, ECF No. 499, at 41.

The Fourth Circuit has held that in sentencings under the First Step Act, the court must recalculate defendant's sentencing guidelines range and correct any prior error. United States v. Chambers, 956 F.3d 667 (4th Cir. 2020). Although Williams was sentenced after enactment of the Fair Sentencing Act, his mandatory life sentence precluded him from

---

motion is predicated on the compassionate release statute, § 3582(c)(1)(A). As such, the court has the authority under the compassionate release statute to reduce his sentence.

[13] Likewise, because Williams' two Florida convictons no longer qualify to enhance his sentence under § 841(b)(1)(A), his ten-year term of supervised release, also a product of the former enhancement, is reduced to six years, concurrent with the six year term of supervised release on each of the measurable quantity distribution counts.

benefitting from the two-level reduction in the subsequent Sentencing Guidelines Amendment 782, which would otherwise have been applicable to his sentence on the measurable quantity distribution counts. Applying that two-level reduction to the guidelines calculation for the distribution counts yields the same guidelines range as that calculated for Count 1 of 188-235 months. Because the Sentencing Commission lowered the drug guideline range by two levels in Amendment 782, effective after Williams was sentenced, and this reduction was made retroactive in Amendment 788, Williams is entitled to the benefit of this reduction. See 18 U.S.C. § 3582(c)(2).[14] Consistent with the 188 month sentence imposed for Count 1, the sentencing factors under § 3553(a) support a reduction on the six measurable quantity distribution counts, Counts 2, 3, 4, 6, 9 and 10, to 188 months, to run concurrently with each other and with Count 1.

This conclusion squares with the general principle that "the law in effect at the time governs sentencing." United States v. Schaefer, 120 F.3d 505, 507 (4th Cir. 1997) (citing Hughey v. United States, 495 U.S. 411, 413 n.1 (1990)); see also 18 U.S.C. § 3553(a)(4)(A)(ii) (at sentencing, the Court must consider "the kinds of sentence and the sentencing range established for–the applicable category of offenses committed . . . as set forth in the guidelines–that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced"); U.S.S.G § 1B1.11 ("The court shall use the Guidelines Manual in effect on the

---

[14] 18 U.S.C § 3582(c)(2) allows a court to modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

date that the defendant is sentenced."). It also finds support in the court's mandate under §

3553(a) to consider, in determining the particular sentence to be imposed, "the need . . . to

provide just punishment for the offense," 18 U.S.C. § 3553(a)(2)(A); "the kinds of sentences

available [at the time of sentencing]," 18 U.S.C. § 3553(a)(3); and "the need to avoid

unwarranted sentencing disparities among defendants with similar records who have been

found guilty of similar conduct," 18 U.S.C. § 3553(a)(6).

Given the changes in the sentence enhancement provisions of § 841(b)(1)(A) worked

by the First Step Act, and considering the two-level retroactive reduction in the drug guideline

ranges effectuated by U.S.S.G. Guideline Amendments 782 and 788, the sentencing factors

under § 3553(a), and the applicable policy statements associated with these guideline

amendments, the court correspondingly reduces Williams' sentences on the distribution

counts (Counts 2, 3, 4, 6, 9, and 10) from 240 months to 188 months, to run concurrently with

each other and the 188 month sentence on Count 1.

## IV.

As both current law and the submission of the United States Attorney to the Pardon

Attorney recognize, Antonio Williams' mandatory life sentence should no longer stand.  His

young age, lack of violence and the stark disparity both between his prior Florida sentences

and the federal mandatory life sentence and the requirements for enhanced sentences under §

841(b)(1)(A) when he was convicted and now, make this an extraordinary and compelling case.

Accordingly, the court **GRANTS** Williams' motion for compassionate release, ECF

No. 761, and his sentence is **REDUCED** as follows.

Williams' mandatory life sentence on Count 1 is **VACATED**, and a total term of imprisonment of 188 months is imposed. Specifically, Williams' sentence on Count 1 is reduced from life imprisonment to 188 months. Williams' sentences on Counts 2, 3, 4, 6, 9, and 10 are reduced from 240 months to 188 months. All terms of imprisonment are to run concurrently with each other.

Williams' term of supervised release of 10 years on Count 1 is **VACATED**, and a total term of supervised release of 6 years is imposed. Specifically, Williams' term of supervised release on Count 1 is reduced from 10 years to 6 years, to run concurrently with the 6-year period of supervised release which remain imposed on Counts 2, 3, 4, 6, 9 and 10.

In all other respects, the judgment order in this case remains in effect.

An appropriate order will be entered.

Entered: September 29, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.09.29 14:58:39 -04'00'

Michael F. Urbanski
Chief United States District Judge